2024 IL App (2d) 230523-U
No. 2-23-0523
Order filed February 15, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-1838 |
| STEPHON R. WESBY, | ) ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1     ***Held***:  The circuit court did not err in denying defendant's pretrial release. The victim's testimony did not overcome the State's proffer of reliable information and the defendant's criminal history of prior domestic batteries against the victims. Counsel was admonished to inform this court when a claim on appeal is frivolous or lacks merit. We affirm.

¶ 2     Defendant, Stephon R. Wesby, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). Section 110-6.1 of the Code was amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act or Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (collectively, the Act). The Office of the State Appellate Defender declined

to file a memorandum pursuant to Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), filing a "Notice Filed in Lieu of Rule 604(h) Memorandum" on January 9, 2024. Thus, defendant stands on the notice of appeal filed by his public defender, which consisted of four checked boxes on the standard form, each of which were supported by minimal additional language. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On August 29, 2023, defendant initially appeared before the circuit court at a bond hearing, which found probable cause to detain him for numerous charged offenses and set bail in the amount of $200,000. The following day, the court entered a bond order reflecting the amount of bail set for defendant's release, appointing the public defender, and scheduling the next status hearing for September 6, 2023.

¶ 5     At the September 6 status hearing, the State informed the circuit court that it had filed a motion to revoke defendant's bail from another case in which he was out on bond when he committed the instant alleged offenses (No. 23-CF-413 (Cir. Ct. Kane County)). The court asked the parties about the effective date of the Act and whether the Act would affect the State's motion. The State responded that defendant's new alleged offenses were detainable and that his conduct would still qualify under its motion to revoke bail under the Act. The court set the next hearing date after the effective date of the Act.

¶ 6     On September 13, 2023, defendant was indicted under case number 23-CF-1838 on 16 total counts of the following offenses: (1) three counts of armed violence committed with a knife while (a) criminally trespassing the victims' residence, (b) kidnapping one of the victims, and (c) unlawfully restraining one of the victims, a Class X felony (720 ILCS 5/33A-2(a) (West 2022)); (2) three counts of home invasion while (a) armed with a dangerous weapon other than a firearm

and (b) intentionally causing injury to the victims, a Class X felony (*id.* § 19-6(a)(2), (3)); (3) aggravated kidnapping, a Class 2 felony (*id.* § 10-2(a)(5)); (4) two counts of kidnapping, a Class 2 felony (*id.* § 10-1(a)(1)); (5) four counts of domestic battery for (a) causing bodily harm to the victims and (b) making physical contact of an insulting or provoking nature with the victims, a Class 2 felony (*id.* § 12-3.2(a)(1), (2)); (6) intimidation, a Class 3 felony (*id.* § 12-6(a)(1)); (7) aggravated unlawful restraint, a Class 3 felony (*id.* § 10-3.1); and (8) unlawful restraint, a Class 4 felony (*id.* § 10-3).

¶ 7    On September 20, 2023, the State filed its verified petition to deny defendant pretrial release under the Act. The petition alleged that under sections 110-6.1(a)(1) and 110-6.1(a) (1.5) of the Act, defendant was charged with felony offenses that required detention in that he allegedly committed forcible felonies involving the threat of or infliction of great bodily harm, his criminal history, and the threat he posed to the safety of the victims and to the community. The State also asserted in the petition that defendant was charged with domestic battery or aggravated domestic battery and that his pretrial release would pose a real and present threat to the safety of the victims or to persons in the community. The State attached the police synopsis and the indictments to its petition as evidence. On the same date, the circuit court conducted a hearing and entered an agreed order continuing the case so that defendant could file a motion seeking his release to be heard at the next court date.

¶ 8    On October 4, 2023, the circuit court conducted a status hearing, during which defense counsel stated that the defense was "preparing a motion for a bond condition." The court scheduled a hearing on defendant's anticipated motion and the State's petition for October 25, 2023.

¶ 9    At the October 25 hearing, defense counsel informed the circuit court that one of the complaining witnesses, Emily Baca, had contacted the defense to testify voluntarily for defendant.

Defense counsel stated that defendant did not compel the complaining witness to testify under section 110-6.1(f)(4) of the Act (725 ILCS 5/110-6.1(f)(4) (West 2022)). Defense counsel told the court that Baca was unable to appear in person and could only appear via video conferencing. Baca did not have access to a camera and would not be visible to the parties or the court during her testimony. In response, the State requested that Baca testify under oath subject to penalty of perjury and that the State had not met with her prior to the hearing. The court stated that Baca was required to appear in court due to the nature of her proposed testimony and rescheduled the hearing. Defense counsel requested to proceed at the next hearing on the State's motion to revoke bond in case number 23-CF-413 and to request release under the Act for the charges in the instant case. Defense counsel clarified that defendant had yet to file a motion seeking his release.

¶ 10    On October 26, 2023, defendant filed a "motion for reconsideration of pretrial release conditions," seeking his release under section 110-6.1(a)(1)-(7) of the Act, but without specifying more. The motion merely listed defendant's charged offenses and then stated that the offenses mentioned were included "under paragraphs (1) through (7) of subsection (a) of 725 ILCS 5/110-6.1." The motion requested a hearing within 90 days.

¶ 11    On November 16, 2023, the circuit court conducted a hearing on defendant's October 26 motion and the State's petition to deny defendant's pretrial release in the instant case. The court also heard the State's motion to revoke bond in case No. 23-CF-413. The State acknowledged that its petition to deny defendant's pretrial release was filed prematurely and sought to have defendant proceed first on his motion to reconsider pretrial release conditions. The court agreed that defendant's motion should proceed first.

¶ 12    Defense counsel sought to present Baca's testimony under section 110-6.1(f)(4) of the Act. 725 ILCS 5/110-6.1(f)(4) (West 2022). The State did not object to Baca appearing voluntarily to testify on behalf of defendant and the court allowed her to testify under oath.

¶ 13    Baca testified on direct examination that, on August 27, 2023, at the location of the alleged incident in this case, 20 North Chestnut Street in Aurora, the house had been condemned. Baca testified that defendant did not kidnap her and that she left the premises voluntarily that day.

¶ 14    On cross-examination, Baca identified defendant in court and acknowledged that she had previously sought two protective orders against him. The State then asked her about a 2015 domestic violence incident in which she was the alleged victim and defendant had been taken into police custody. The State next questioned Baca regarding a 2017 domestic battery incident in which she also was defendant's victim. Finally, the State asked Baca about a 2019 domestic battery incident during which she called the police and defendant was arrested. Baca testified that defendant was imprisoned in those cases.

¶ 15    After Baca testified, the State proffered exhibit 1, which contained the 6-page police synopsis of this incident. The synopsis' facts included the following:

¶ 16    Baca, listed as defendant's current girlfriend, was living at the same residence at 20 North Chestnut Street in Aurora, as his ex-wife, Cynthia Foxworthy, due to his repeated domestic violence towards Baca. On the night of August 27, 2023, defendant contacted Baca at that residence and told her to leave. Baca refused. Thereafter, defendant arrived at the residence in his vehicle. Foxworthy went outside and told defendant to leave Baca alone and go home. Foxworthy and defendant got into a verbal altercation. Foxworthy felt that she was in danger and attempted to run back into her residence and lock defendant out. Defendant caught up to Foxworthy at the front door. As Foxworthy attempted to shut the front door, defendant pushed the door open and

pushed Foxworthy into the house. Once inside, defendant opened a pocketknife and brandished its blade. He yelled at Baca to leave with him. She attempted to flee the kitchen area. Defendant moved towards Baca, grabbed her by her hair, and slammed her head into a wooden coffee table. Defendant kept hold of Baca's hair as he dragged her out of the residence and into his car. As he was leaving, he told Foxworth that he would kill Baca and "you too" if Foxworthy contacted the police. Defendant drove to a gas station and an apartment complex in Aurora. Along the way, he struck Baca about the face. Baca told police that she did not leave the vehicle because she feared that defendant would run her over and kill her. Defendant had told Baca in the past that "the only way she will 'get away from him' is if she [is] 'six feet under' (dead)." Police recovered Baca at the apartment complex with defendant, who was taken into custody. Baca made statements to police that she feared for her life and that she believed defendant "will end up killing her."

¶ 17    Police officers observed that Baca had injuries to the side of her face and temple. Baca confirmed the injuries originated from the altercations involving defendant that night. Baca told police that she fell onto the table, rather than from defendant's actions. Also, Baca could not recall how she left the residence. She confirmed that the mark on her face occurred when defendant struck her in the vehicle.

¶ 18    Police officers also observed that Foxworthy had an injury on her forearm. Foxworthy confirmed that the injury had occurred when defendant forced his way through the door and pushed her back.

¶ 19    The State also informed the circuit court that defendant was out on bond for Class X possession with intent to deliver a controlled substance in case No. 23-CF-413. In addition, the State argued that defendant's criminal history, dating back to 1985, included numerous instances of domestic violence involving both Foxworthy and Baca. In 2011, defendant pled guilty and

served 28 months in prison for the violation of a Class 4 order of protection. In 2015, defendant was imprisoned for misdemeanor domestic battery, unlawful restraint, and felony unlawful restraint, in which Baca was the victim. Baca again was the victim of a 2017 misdemeanor domestic battery in which defendant served 180 days in the county jail. In 2019, defendant received probation for a Class 3 retail theft and also pled guilty to a misdemeanor battery in which Baca was the victim. Defendant was arrested for a Class 2 robbery in a pending case in Du Page County.

¶ 20    The State argued that, in this case, 23-CF-1838, defendant committed forcible felonies and the evidence supported that he is a real and present threat to Baca and Foxworthy, as well as to the community. The State noted that case No. 23-CF-413 did not involve a crime of violence, but that defendant had failed to appear on warrants for cases in Kane and Du Page Counties. A police search incident to arrest in case No. 23-CF-413 revealed crack cocaine, paraphernalia, a scale, and more than 18 grams of a substance that tested positive for the presence of cocaine.

¶ 21    Following the State's proffer, defendant requested that he be considered for pretrial release under the Act. Defendant argued that the State failed to meet its burden by clear and convincing evidence. Defendant contended that the State "only provided a police report and no live witnesses." Defendant argued that Baca testified that she had not been kidnapped and, therefore, there was no danger or specific, articulable facts to support his detention. The circuit court took the parties' arguments under advisement.

¶ 22    The following day, the circuit court ruled on defendant's motion and the State's petition. The court found that "the proof is evident or the presumption great that the defendant has committed a detainable offense pursuant to [the Act]; that the defendant poses a real and present threat to the physical safety of both [Baca] and [Foxworthy]." The court stated that even though Baca testified under oath that she had not been kidnapped, Foxworthy had witnessed the events

and reported them to the police. The court found that the State had proven by clear and convincing evidence that on counts I, IV, V, X, XI, XII, and XIII, the proof is evident and presumption great that defendant had committed detainable offenses, which included counts for domestic battery, armed violence, and home invasion. The court found its conclusion was bolstered by defendant's threats to kill Baca and Foxworthy if they contacted the police. The court also noted Baca's statements to police that she feared for her life and believed defendant would end up killing her. In addition, the court pointed to Baca's injuries, which she confirmed had originated from defendant. The court also noted Foxworthy's injuries that had occurred when defendant forced his way through the door and pushed her.

¶ 23    The circuit court found that defendant posed a real and present threat to Baca and Foxworthy. The court also considered the dangerousness of defendant's conduct under section 110-6.1(g) of the act, considering his use of a knife during the commission of the crimes, defendant's criminal history, including evidence of prior violent, abusive, or assaultive behavior. In addition, the court considered that defendant was on release from custody on a Class X drug case pending trial when he committed the instant alleged offenses. Further, the court found that less restrictive conditions, including electronic home monitoring, would not assure the safety to the community considering that he told the victims that he would kill them if they called the police. Finally, the court found that clear and convincing evidence supported its finding to revoke defendant's bond in case No. 23-CF-413 and that defendant be detained for the alleged offenses in the instant case. The court entered a written detention order on November 17, 2023. Defendant timely appealed.

¶ 24                                II. ANALYSIS

¶ 25    In defendant's standard form notice of appeal, his assistant public defender checked four boxes, each of which contain a short elaboration identifying a basis for the checked claim of error. The first argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that he committed the offenses charged because the "State presented the police report synopsis for this case," and that no live witnesses were called to testify. Defendant stated that Baca testified her residence was condemned and unfit on the date of the offense and that she also testified that she had not been kidnapped. The second checked box argues that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case because the "State's proffer from the police report synopsis is not sufficient to meet the burden." Defendant also argued that Baca's testimony that she was not kidnapped supports his contention. Next, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case, or defendant's willful flight. Defendant simply states that it is his position "that other pretrial conditions would mitigate any threat to the safety of any person or the community" and "[s]pecifically, [he] requested Electronic Home Monitoring, no contact with the complaining witness, no possession of any weapons." Finally, he argues that he was denied an opportunity for a fair hearing prior to the entry of the order denying or revoking pretrial release because the "State did not present any live witness."

¶ 26    Pretrial release is governed by article 110 of the Act. 725 ILCS 5/110-1 *et seq.* (West 2022). Under the Act, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a), 110-6.1. The circuit court may consider certain factors in making a determination of

dangerousness under section 110-6.1(g) to assess whether the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. *Id*. § 110-6.1(g).

¶ 27    To deny a defendant pretrial release, the circuit court must find that the State proved the following by clear and convincing evidence: (1) the proof was evident or the presumption great that defendant committed a detainable offense (*id.* § 110-6.1(e)(1)); (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). We review whether the circuit court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the circuit court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 28    Initially, we reject defendant's argument that a police synopsis is *per se* insufficient to demonstrate that the proof was evident or the presumption great that defendant committed the charged offenses. At a pretrial detention hearing, the State is explicitly permitted to present evidence "by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022); see also *id*. § 110-6.1(f)(5) (exempting detention hearings from the rules of evidence). Without explaining why this particular police synopsis was not "reliable information" under the Act, the public defender's notice of appeal simply asserts the "State's proffer from the police report synopsis is not sufficient to meet the burden." This bare, conclusory argument has been commonly

asserted in appeals involving the Act but, without more, is patently without merit. We have previously held that a police synopsis alone is sufficient to sustain the State's burden. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24 (opinion filed December 18, 2023). We note that the public defender's notice of appeal was filed prior to *Horne*, but the Appellate Defender's notice to the court was filed almost a month after this court's decision, on January 9, 2024. To argue after this point that a proffer of a police synopsis is *per se* insufficient is frivolous, as this contention flies in the face of now-established case law and clear statutory language.

¶ 29     Even if we were to consider defendant's claim of error as an argument that the synopsis did not contain sufficient evidence that he committed the charged offenses, the synopsis is replete with evidence that defendant committed the charged offenses of armed violence (720 ILCS 5/33A-2(a) (West 2022)), home invasion while (a) armed with a dangerous weapon other than a firearm and (b) intentionally causing injury to the victims (*id*. § 19-6(a)(2), (3)), in addition to domestic battery for (a) causing bodily harm to the victims and (b) making physical contact of an insulting or provoking nature with the victims (*id*. § 12-3.2(a)(1), (2)). Contained within the State's proffered synopsis is a detailed narrative of events, including allegations that defendant charged after Foxworthy and broke through the front door of the victims' residence, striking Foxworthy, grabbing Baca by the hair, slamming her head into a coffee table, dragging Baca by her hair out of the residence and into his vehicle, striking her about the head while in the vehicle, and holding Baca against her will until police arrived. Police officers spoke to Foxworthy and Baca, who each detailed the events, which were included in the synopsis. Despite Baca's attempted recantation at the detention hearing, she nevertheless confirmed portions of the events detailed in the synopsis. The evidence presented at the hearing is clear and convincing that defendant committed the offenses in which the circuit court found that the proof was evident or the presumption great that

he committed detainable offenses. We find the circuit court properly concluded the evidence in the synopsis was more than sufficient to show by clear and convincing evidence that the proof was evident or presumption great that defendant committed the charged offenses.

¶ 30    Second, as to defendant's "dangerousness," defendant's notice of appeal argues the police synopsis was insufficient evidence and that Baca voluntarily testified she had not been kidnapped. Neither of these arguments address the circuit court's assessment of each of the nine listed factors under section 110-6.1(g) of the Act, many of which were present here as well: the offenses involved a weapon (725 ILCS 5/110-6.1(g)(1) (West 2022)); defendant's criminal history abounds with violent, abusive, and assaultive behavior (*id*. § 110-6.1(g)(2)(A)); he threatened to kill both Baca and Foxworthy (*id.* § 110-6.1(g)(3)); at the time of the offenses, he was out on bond for a Class X felony (*id*. § 110-6.1(g)(8)); and his criminal history illustrates a propensity or reputation for violent, abusive, or assaultive behavior (*id.* § 110-6.1(g)(9)). Given defendant's criminal history and section 110-6.1(g)(7)'s explicit recognition of the inherent danger of access to weapons, such as the knife defendant brandished in this case, as well as the physical violence and assaultive circumstances of the offense, the injuries to the victims, and his overt threats to kill them, the circuit court's finding that defendant posed a threat to the safety of Emily Baca and Cynthia Foxworthy, as well as to the community, was not against the manifest weight of the evidence.

¶ 31    Defendant's remaining claims of error generally concern a circuit court's findings that no condition or combination of conditions of pretrial release can mitigate the threat posed or ensure appearance, as well as his "position that other pretrial conditions would mitigate any threat to the safety of any person or the community." Defendant requested electronic home monitoring, no contact with the complaining witnesses, and no possession of any weapons. He also checked the

box indicating he was denied an opportunity for a fair hearing prior to the entry of the order denying or revoking pretrial release because the "State did not present any live witness." These bare assertions are devoid of arguments or facts in the notice of appeal with no memorandum, nor can we characterize the arguments made before the circuit court as containing any such claims. Because defendant has provided no argument to support either of these contentions, he has forfeited these issues on appeal. *People v. Duckworth*, 2024 IL App (5th) 230911, ¶ 8 (finding, among other things, that "this court has nothing on which to base an analysis of the defendant's allegations on appeal, and the defendant has forfeited the issues raised on appeal," since defense counsel "declined its opportunity to provide the missing argument, citation of the record, or authority that would support any argument that could have been made for the issues raised on appeal"); see also *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 16 (declining to review issues raised only in the notices of appeal but not included in defendant's memorandum); *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 41-42 (finding that OSAD's memorandum controls the issues addressed on appeal); *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (finding defendant abandoned those Rule 604(h) claims raised in the notice of appeal but not addressed in OSAD's memorandum).

¶ 32    Nonetheless, the evidence clearly supported the circuit court's determination that no set of release conditions could mitigate the threat posed to the two victims and the community. Defendant has not pointed to any authority requiring the State to present live witnesses at the pretrial detention hearing. Indeed, section 110-6.1(f), entitled "[c]onduct of the hearings," is devoid of any requirement to present live witnesses and instead states that the parties "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). Here, the specific articulable facts of this case all weigh heavily in favor of the circuit

court's determination that no condition or combination of conditions could mitigate the real and present threat defendant posed. Moreover, defendant's repeated criminal history of perpetrating domestic violence upon both victims further bolsters this conclusion. In addition, defendant was out on bond for a Class X felony when he committed the offenses in this case and had failed to appear on warrants for pending cases in Kane and Du Page Counties. Accordingly, the court quite reasonably concluded that no less restrictive conditions can mitigate the real and present threat to the safety of the two victims and the community.

¶ 33     As for the remaining claims in the notice of appeal, there are no arguments presented and we can discern no arguable basis from the record for any of them. "[I]t is neither the function nor the obligation of this court to act as an advocate or search the record for error [citation]." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). " 'A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *In re Marriage of Baumgartner*, 237 Ill. 2d 468, 474-75, (2010) (quoting *Pecora v. Szabo*, 109 Ill. App. 3d 824, 825-26 (1982)). Therefore, these claims are forfeited.

¶ 34     We note that every attorney in every case must comply with Rule 3.1 of the Rules of Professional Conduct, which states:

> "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established." Ill. R. Prof'l Conduct (2010) R. 3.1 (eff. Jan. 1, 2010).

As part of defense counsel's ethical obligations under Rule 3.1, it is incumbent upon counsel to inform this court as to whether the defendant's claims are meritorious and, if not, to withdraw any frivolous claims or even the entire appeal under the Act. See Ill. R. Prof'l Conduct (2010) R. 3.1 (eff. Jan. 1, 2010).

¶ 35    In response, the State filed a pro forma, bare-bones argument, without applying the evidence presented in the circuit court to the statute. We recognize that the State is not required to file a response under the Act; however, we suggest that when the State does file a response, to provide this court with an explanation of how the relevant facts of the case apply to the specific sections of the statute under the Act. A reviewing court is entitled to have the issues and arguments clearly defined. It is not the obligation of this court to act as an advocate for the parties, yet that is what this court has done here to resolve this appeal because both defense counsel and the State failed to provide this court with the necessary arguments and authority to support this appeal. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 40.

¶ 36    Following our recent decision in *People v. Mancilla*, 2024 IL App (2d) 230505, appellate attorneys appointed to represent the defendant under the Act are required to determine whether a defendant's claims have arguable merit and, if, in their opinion, they do not, counsel cannot in good faith file or continue to pursue such a frivolous appeal or claim within an appeal. This may be accomplished by filing an amended notice of appeal or simply by including within a memorandum on appeal pursuant to Rule 604(h) (or within a notice filed in lieu of such a memorandum) a concise statement indicating that counsel is withdrawing one or more of the claims identified in the notice of appeal that was filed in the circuit court. *Id*.

¶ 37    For the foregoing reasons, the circuit court did not err in denying defendant's pretrial release, and we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.