2024 IL App (2d) 240436-U
Nos. 2-24-0436, 2-24-0437, 2-24-0438 cons.
Order filed November 6, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 24-CM-769, 24-CF-833, 24-CF-872 |
| MARCUS A. HILL, | ) ) | Honorable Clint Hull & |
| Defendant-Appellant. | ) ) ) | William G. Engerman, Judges, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence presented at the hearings showed that the proof was evident and the presumption great that defendant committed the offenses as charged. Further, the State proved by clear and convincing evidence that defendant poses a real and present threat to the safety of L.F. and no conditions can mitigate that threat. Accordingly, the circuit court did not abuse its discretion in denying defendant's pretrial release and subsequently denying his motion for relief. Affirmed.

¶ 2    Defendant, Marcus A. Hill, appeals the July 26, 2024, order of the circuit court of Kane County denying defendant's motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2),

which sought to have an order entered granting defendant pretrial release. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On May 4, 2024, defendant was charged via complaint in case no. 24-CF-833 with two counts of aggravated domestic battery strangulation (720 ILCS 5/12-3.3(a-5) (West 2024)), a class 2 felony, and two counts of domestic battery (720 ILCS 5/12-3.2(a)(1) & (2) (West 2024)), a class A misdemeanor. That same day, the State filed a verified petition to deny defendant pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024), alleging that defendant committed a detainable offense and that his pretrial release poses a real and present threat to the safety of any person or persons or the community.

¶ 5     Also on May 4, 2024, defendant was charged via complaint in case no. 24-CF-872 with one count of aggravated domestic battery strangulation (720 ILCS 5/12-3.3(a-5) (West 2024)), a class 2 felony, one count of domestic battery contact with four or more prior convictions (720 ILCS 5/12-3.2(a)(2) (West 2024)), a class 2 felony, one count of aggravated battery to a victim 60 or more years of age (720 ILCS 5/12-3.05(d)(1) (West 2024)), a class 3 felony, and two counts of domestic battery (720 ILCS 5/12-3.2(a)(1) & (2) (West 2024)), a class A misdemeanor. Again, that same day, the State filed a verified petition to deny defendant pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024).

¶ 6     Both matters proceeded to hearing on the State's petitions on May 9, 2024. The State began by presenting ten exhibits, all of which were admitted into evidence. Exhibits No. 1 through 6 were sworn synopses from case nos. 24-CM-714, 24-CF-833, 24-CF-872, 24-CM-708, 23-CF-1065,

and 23-CF-2731.[1] The synopsis in case no. 24-CF-833 indicated that on April 22, 2024, Elgin police officers were dispatched to 752 Spyglass Hill Court in reference to a past domestic battery. Upon arrival, officers spoke with L.F., who had injuries on her face. She told officers that earlier that day, defendant had accused her of infidelity. The argument escalated and defendant slapped her on the left side of her face. She further relayed that defendant has previously been violent towards her and that she currently has an order of protection against defendant. When asked about scabbing to her face, she responded that two days ago, defendant had choked her and kicked her in the face. When officers approached defendant, he denied ever being physically aggressive towards L.F. Officers noted that defendant was highly intoxicated and expressed some suicidal ideations. Due to these statements, officers transported defendant to the hospital for an evaluation.

¶ 7      The synopsis in case no. 24-CF-872 indicated that on April 27, 2024, L.F. arrived at the Elgin Police Department lobby to report further acts of domestic violence perpetrated by

---

[1] Defendant was charged with violation of a protective order (720 ILCS 5/12-3.1(a)(2) & (1) (West 2024)) in case nos. 24-CM-714 and 24-CM-708 on May 4, 2024, and May 3, 2024, respectively. The protected person in each case was L.F., the victim in the instant appeals. Defendant was also charged with aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West 2022) in case no. 23-CF-1065. He was also charged with aggravated battery to a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)) in case no. 23-CF-2731. The State filed petitions to detain pursuant to 725 ILCS 5/110-6.1 (West 2024) in case nos. 24-CM-714 and 24-CM-708, which also proceeded to hearing on May 9, 2024. As case nos. 24-CM-714, 24-CM-708, 23-CF-1065, and 23-CF-2731 are not at issue in this appeal, they will not be discussed, except as necessary.

defendant. She relayed that defendant was released from the hospital on April 26, 2024. Upon arrival home, he began drinking and accused L.F. of infidelity while he was in the hospital. He told her "I'm going to kill you," "I'm going to blow your shit up," "no one can save you now." Defendant continued to grow more irate and began to choke her. L.F. attempted to stop defendant by hitting him in the face and then stood up, but he began to choke her again. L.F. then fell to the ground. After she fell, defendant choked her for a third time, this time causing her to lose consciousness. Officers observed injuries to L.F.'s face and neck consistent with her report of events. Defendant was then arrested and taken into custody. When interviewed, defendant reported that L.F. had bitten his tongue and he was upset that she was not arrested for this.

¶ 8 The synopses in case nos. 24-CM-714 and 24-CM-708 both indicated that defendant had violated a protective order after receiving notice (720 ILCS 5/12-3.1(a)(2) & (1) (West 2024)) by attempting to contact L.F. via phone while in custody.

¶ 9 Exhibit Nos. 7 through 9 were photographs of the victim, L.F., showing bruising on L.F.'s eyes and nose and abrasions on her neck. Exhibit No. 10 was the public safety assessment, which rated defendant a 6 out of 6 on both the new criminal activity scale and the failure to appear scale. The State also proffered defendant's criminal history, which included seven prior convictions for domestic battery, two prior convictions for violation of an order of protection, three convictions for various property crimes, and convictions for mob action, unlawful delivery of a controlled substance, battery, resisting a peace officer, and aggravated battery to a peace officer. His criminal history also showed that at the time he committed the instant offenses, he had five cases pending pretrial and was on conditional discharge in case nos. 22-CM-1158 (battery (720 ILCS 5/12-3(a)(2) (West 2022)) and 22-CM-1551 (resisting a peace officer (720 ILCS 5/31-1(a)(1) (West 2022)).

¶ 10    Defendant then entered into evidence a letter from Gateway Foundation confirming that there was a bed on hold for defendant to enter into residential substance abuse treatment on May 17, 2024.

¶ 11    The State argued that defendant's pretrial release poses a real and present threat to the safety of the community, specifically the victim, L.F. The synopses show that the victim reported acts of violence committed by the defendant, which were corroborated by the injuries to her person. The photos entered into evidence showed the injuries were significant. Defendant has strangled L.F. on two different occasions. Accordingly, he is a real and present threat to L.F. The State also pointed out defendant's lengthy, violent criminal history, as well as the repeated offenses against L.F., to argue that no condition or combination of conditions would ensure the safety of L.F. or the community.

¶ 12    The trial court asked the State when the photos were taken. Although the State was not able to definitively answer, indicating instead that they believed the photos were taken on April 22, 2024, the synopsis in case no. 24-CF-833 indicated that photos of L.F.'s injuries were uploaded to evidence.com, suggesting that the photos were in fact taken on April 22, 2024.

¶ 13    Defendant then argued that in terms of case nos. 24-CM-714 and 24-CM-708, it was his position that he had not yet been served with the order of protection when he made the calls. Now that he was aware of it, he had the ability to stay away from L.F. and electronic home monitoring would be sufficient to alleviate any threat he may pose. In terms of case nos. 24-CF-833 and 24-CF-872, defendant is innocent until proven guilty.

¶ 14    On the record, the trial court reviewed the statutory requirements for detainment. It then issued its oral ruling:

"First of all, I do believe that the State has proven by clear and convincing evidence that the defendant -- the proof is evident and the presumption great that the defendant has committed qualifying offenses in 24 CF 872 and 24 CF 833.

The Court is going to find that -- based upon the proffered evidence of not being served, I will not find that there has been proof by clear and convincing evidence in 24 CM 714 and 24 CM 708, so he will be placed on conditions in those files.

The next factor I do find that the State has proven by clear and convincing evidence that his pretrial release poses a real and present threat to the safety of [L.F], as well as to the community at large.

And I do find that the State has proven by clear and convincing evidence that there is no combination of conditions or condition that could mitigate the real and present threat to the safety of [L.F.] or the community and the findings are as follows:

First of all, the Court has reviewed the synopses that were provided in both 872 and 833. Specifically, the Court wants to address some of the factors and some of the evidence that has been presented in 872, which is the offenses of aggravated domestic battery - strangulation, domestic battery involving priors, and domestic battery.

In reviewing the synopsis on that charge, the victim has indicated in the synopsis that she was choked to a point where she could not breathe, that she suffered significant injuries, that she fought the defendant to try to get him to stop, and the defendant made certain statements which the Court finds is indicative and

evident and proof as to why I believe there is a real and present threat not only to her, but to the community.

Alleged statements that he made were, "I'm going to kill you." "I'm going to blow your shit up." "No one can save you now." Ultimately, while making those statements, the allegation is he grabbed on to her throat, squeezed, applied pressure, that she was unable to breathe or talk, that she was attempting to hit him to try to get him to stop choking, that after she was successful in doing that he then began to choke her again throwing her to the ground, and she hitting her left shoulder while falling. Again, after that the defendant's alleged to have choked her again, and she believed at that time she lost consciousness.

In 24 CF 833, again the allegations are that he committed the offense of aggravated domestic battery by way of strangulation. In that particular case, again, the evidence that has been presented shows that he slapped Ms. Fletcher with an open hand and then went on to choke her using both hands for approximately 30 seconds. There is additional evidence in the synopsis.

The Court has also reviewed the photographs which were part of the exhibit, State's 7, State's 8, State's 9, which shows significant bruising and cuts to both her left and right eyes, a cut and bruising on the bridge of her nose, and scrape marks on her neck, which would be corroborative of the allegations that were allegedly made -- not allegedly -- that were made by the victim.

In addition to the evidence that has been cited, the defendant has a significant domestic battery -- significant criminal history, which would include, as

the State outlines, convictions for domestic battery, criminal trespass to residence, domestic battery, mob actions, resisting.

I have considered the argument that there are other conditions or a combination of conditions that could protect the victim in this case. However, I believe that, based on the statements made and based upon the defendant's criminal history, he has shown that he will not obey the laws of the Court, that he will not obey the laws to stay away.

Even if the Court was to place him on electronic home monitoring, I believe that the evidence that has been presented would show that he would disregard those court orders despite the fact that they were present and that he would be a threat not only to her, but to the community.

I would also note that -- based upon all of the evidence that has been presented, I can't say strongly enough how much I believe, considering all ten of these factors that the Court considered, that [L.F.] would be at significant risk if [defendant] was to be released.

For those reasons, I am going to grant the State's petitions in 24 CF 872 and 24 CF 833 and order him to be detained on those offenses."

¶ 15    On case nos. 24-CM-708 and 24-CM-714, the condition that defendant have no contact with L.F. was imposed. A written order summarizing the trial court's oral findings was entered in case nos. 24-CF-833 and 24-CF-872. Defendant was remanded into custody and the cases were all continued to May 16, 2024.

¶ 16    On May 13, 2024, defendant was charged via complaint in case no. 24-CM-769 with violation of an order of protection after being served notice (720 ILCS 5/12-3.4(a)(2) (West

2024)), a class A misdemeanor. A few days later, on May 15, 2024, the State filed a verified petition to deny defendant pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024), alleging again that defendant committed a detainable offense and that his pretrial release poses a real and present threat to the safety of any person or persons or the community.

¶ 17  On May 16, 2024, all of defendant's cases were up and a hearing was held on the State's newest petition to deny defendant pretrial release in case no. 24-CM-769. The State entered 11 exhibits into evidence, the ten exhibits previously entered (see *supra* ¶ 6-9) and the sworn synopsis from case no. 24-CM-769. This synopsis indicated that on May 12, 2024, Elgin police officers were dispatched to 752 Spyglass Hill Court in reference to a violation of an order of protection. Upon arrival, officers spoke with L.F., the petitioner of an order of protection against defendant that was served on April 27, 2024 (case no. 24-OP-579). She told officers that on May 11, 2024, she received a letter in the mail from defendant. The letter shows a drawing of two hearts with her and the defendant's name in them. A postscript was also included, in which defendant asked L.F. to "please put all [his] things up."

¶ 18  Defendant then proffered that he has a bed at Gateway, an inpatient substance abuse facility, available as of May 17, 2024.

¶ 19  The State argued that defendant's pretrial release poses a real and present threat to L.F., and the community at large. A mere two days after being detained on case nos. 24-CF-833 and 24-CF-872, after being specifically advised of the order of protection, and after being admonished to not have any contact with L.F., defendant sent a letter to L.F. No conditions or combination of conditions would ensure L.F.'s safety, as evidenced by the violent nature of case nos. 24-CF-833 and 24-CF-872, defendant's criminal history, and defendant's seemingly violent relationship with L.F.

¶ 20    Defendant then argued that he only poses a threat to one person, L.F., not the community at large. The threat he poses to L.F. is mitigated, as he is now on notice of the order of protection. He also asked the court to consider release to treatment for substance abuse, as the offenses were related to substance abuse.

¶ 21    The State countered by pointing out that Gateway is a nonsecure facility and that defendant could leave at any time. This would pose a significant risk to L.F., as the last time that defendant left a hospital for treatment for alleged intoxication, he was subsequently charged in case no. 24-CF-872 for domestic battery against L.F.

¶ 22    The trial court then made its oral ruling, finding that the State proved by clear and convincing evidence that the presumption is great that the defendant committed the offense of violation of an order of protection. It also found that defendant posed a real and present threat to L.F. based upon continued violations of court orders, and that no condition or combination of conditions would mitigate that threat. The trial court specifically considered the option of conditioning defendant's pretrial release on admission to Gateway. It found that as it was a nonsecure facility, this was not a viable option. It also considered electronic home monitoring, which the defendant had interjected to propose as a condition. The trial court found that because of defendant's repeated disregard for court orders, electronic home monitoring was not a viable option either. For those reasons, defendant was ordered detained. A written order summarizing these findings was also entered and all cases were continued to June 7, 2024.

¶ 23    On June 7, 2024, defendant tendered a letter from Gateway Foundation dated June 4, 2024, advising that there would be a bed available for defendant on June 10, 2024.  Defendant argued that he could be released to Gateway and be placed on electronic home monitoring to ensure that he remained in the facility, despite it being non-secure. The trial court, in reviewing whether

defendant's continued detention was necessary to avoid a real and present threat to the safety of L.F. or the community (see 725 ILCS 5/110-6.1(i-5) (West 2024)), incorporated its findings from the previous hearings and further determined that electronic home monitoring would not be a suitable condition, given defendant's extensive criminal history and continued violation of conditions imposed by the court. The trial court ordered defendant's continued detention and the cases were continued to June 21, 2024.

¶ 24    On July 26, 2024, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2), which was denied that same day. Defendant filed his timely notice of appeal in all three cases on July 29, 2024. On this court's own motion, these appeals were consolidated on October 3, 2024.

¶ 25                                II. ANALYSIS

¶ 26    Defendant filed three notices in lieu of a memorandum, wherein he indicated that "[p]ursuant to Rule 604(h)(7), defendant-appellant is not filing a memorandum." The State argues in their brief that defendant's failure to file a memorandum results in forfeiture, as defendant's motion for relief did not clearly define the issues, cite to pertinent authority, or provide a cohesive legal argument. While defendant's motion for relief may be rather brief, it does contain at least some rudimentary facts and support for the relief he seeks. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. Accordingly, defendant did not forfeit his arguments on appeal and we turn now to the merits.

¶ 27    In his motion for relief[2], defendant raises three issues: (1) "that the evidence was insufficient to prove by clear and convincing evidence that the proof is evident or the presumption

---

[2] Under Illinois Supreme Court Rule 604(h)(7), "[t]he motion for relief will serve as the

grate [*sic*] that the defendant committed the offenses charged; (2) that "[t]he State failed to meet its burden by proving by clear and convincing evidence that the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case"; and (3) that "[t]he Court erred in finding that there were no condition or combination of conditions that would mitigate the risk of the defendant's release."[3] We reject each of these arguments in turn.

¶ 28    A circuit court's decision to detain a defendant is reviewed using the now familiar two-part standard of review promulgated by *People v. Trottier*. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. The manifest-weight-of-the-evidence standard applies to the circuit court's factual determinations. *Id.* A finding is contrary to the manifest weight of the evidence only if an opposite conclusion to the circuit court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

---

argument of the appellant on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

[3] In his motion for relief, defendant lists his second argument twice. However, under the second iteration of the argument, the first subparagraph alleges "[t]he Court erred in finding that there were no condition or combination of conditions that would mitigate the risk of the defendant's release." All following subparagraphs deal with the issue of conditions. Accordingly, defendant's third argument is being treated as the substance of the subparagraphs rather than the heading.

¶ 29    Turning to defendant's first argument, he alleges that the police report synopses were insufficient to show that the proof is evident or the presumption great that the defendant committed the offenses as charged. He further argues that the synopses show officers' biases and are therefore not reliable. This court has time and time again found that police report synopses, if reliable, are sufficient to show that the proof is evident or the presumption great that the defendant committed the offenses as charged. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24. Indeed, the legislature anticipated the potential challenges of conducting an evidentiary hearing at such an early stage in the criminal proceedings and attempted to alleviate these challenges by specifically allowing for either party to present evidence by way of proffer based upon reliable information and by relaxing the traditional rules of evidentiary admissibility for purposes of these hearings. See 725 ILCS 5/110-6.1(f)(2) & (5) (West 2024). In terms of defendant's claim of officer bias, he provides no support for this conclusory statement and therefore has forfeited this argument on appeal.

¶ 30    Defendant also argues that the photos of the victim were not dated, so they were insufficient to show that defendant committed the acts of domestic battery on the date alleged. However, the trial court took this into consideration and noted that the police report synopsis in case no. 24-CF-833 indicated that photos of L.F.'s injuries were uploaded to evidence.com. As such, it was reasonable for the trial court to infer that the photos of L.F.'s injuries were from April 22, 2024, not some other date irrelevant to proceedings. Whether that would be sufficient foundation at trial is a question we need not address, as the traditional rules of evidentiary admissibility do not apply at this stage. See 725 ILCS 5/110-6.1(f) (5) (West 2024).

¶ 31    Finally, defendant argues that his denials that are noted in the police report synopses show that the State had not met its burden. However, it is well established that "a fact finder need not accept the defendant's version of events as among competing versions." *People v. Ortiz*, 196 Ill.

2d 236, 267. Defendant's denial was rebutted by the statement of L.F., which were corroborated by her injuries. Defendant's statements have no such corroboration. The trial court was reasonable in not accepting the defendant's version of events and concluding that the proof was evident and or the presumption great that defendant committed the offenses.

¶ 32    Defendant's second argument is that "[t]he State failed to meet its burden by proving by clear and convincing evidence that the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case." In support of this, defendant argues that his denials of the offense show that he is not a danger and that the trial court improperly took into consideration defendant's criminal history from the early and mid-2000s and other current pending cases. He further argues that if given the chance to enter residential treatment, he would not pose a danger, as he would be able to comply with electronic home monitoring while engaged in treatment. We again reject these arguments. First, we reiterate that the trial court is not required to take a defendant's denials of an offense as true. *Ortiz*, 196 Ill. 2d at 267. As discussed, the trial court was reasonable in not accepting the defendant's version of events and its reliance on L.F.s statements in determining that defendant poses a real and present threat was not improper.

¶ 33    Second, in determining whether defendant poses a real and present threat, the court may take into consideration the history and characteristics of the defendant including evidence of defendant's prior criminal history indicative of violent, abusive, or assaultive behavior. 725 ILCS 5/110-6.1(g)(2)(A) (West 2024). As this is something explicitly allowed by statute, the trial court did not err in considering it.

¶ 34    Third, defendant's argument that he would not pose a danger if released to residential treatment, as he would be able to comply with electronic home monitoring while engaged in

treatment, is not supported by the evidence. Here, the trial court was presented with numerous sworn police report synopses indicating defendant brutally attacked L.F. Even after defendant was detained, he continued to attempt to reach out to L.F., despite being ordered by the court to have no contact with her. Defendant has an extensive, violent criminal history, and a more recent history of continued violence against L.F. No evidence was presented showing that residential treatment would miraculously give him the ability to follow court orders. Given all of this, the trial court's finding of dangerousness was not against the manifest weight of the evidence.

¶ 35    Finally, defendant argues that "[t]he Court erred in finding that there were no conditions or combination of conditions that would mitigate the risk of the defendant's release." Defendant argues that because he no longer resides with the victim and would be able to comply with electronic home monitoring once in substance abuse and mental health treatment, the court erred by not imposing conditions, and instead ordering defendant detained pretrial. We reject this argument as well. The trial court gave careful consideration to the option of conditioning defendant's pretrial release on completion of inpatient substance abuse and mental health treatment. It was presented with a letter from Gateway, stating that a bed was available to defendant. However, the trial court properly determined that given defendant's apparently concerted efforts to circumvent court orders and maintain contact with L.F., release to a nonsecure facility would not sufficiently mitigate the threat defendant posed.

¶ 36    Accordingly, the trial court's decision to detain defendant was not an abuse of discretion.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 39    Affirmed.