2025 IL App (2d) 250058-U
No. 2-25-0058
Order filed May 13, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  25-CF-108 |
| | ) ) | Honorable |
| JAVIER ARROYO, | ) ) | Salvatore LoPiccolo, Jr., and Donald Tegler, Jr., |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2     Defendant, Javier Arroyo, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to these

public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) the proof is evident or the presumption great that he committed the charged detainable offenses; (2) he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. We affirm.

¶ 3                           I. STATEMENT OF FACTS

¶ 4                               A. Background

¶ 5     On January 22, 2025, defendant was charged by complaint with: (1) one count of aggravated domestic battery (strangle) (720 ILCS 5/12-3.3(a-5) (West 2024)), a class 2 felony; (2) one count of domestic battery (bodily harm) (720 ILCS 5/12-3.2(a)(1) (West 2024)), a class A misdemeanor; and (3) one count of domestic battery (physical contact) (720 ILCS 5/12-3.2(a)(2) (West 2024)), a class A misdemeanor. The charges stemmed from an encounter between defendant and Rosa R., on January 14, 2025. Count I alleged that defendant, while committing a domestic battery, knowingly caused bodily harm to Rosa, a family or household member, in that he intentionally strangled Rosa about the neck area by applying pressure on the throat or neck of Rosa, thereby impeding her normal breathing. Count II alleged that defendant knowingly and without legal justification caused bodily harm to Rosa, a family or household member of defendant, in that defendant threw Rosa against a wall, pinned her against the wall, and strangled

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

her by placing both of his hands around her neck. Count II further alleged that defendant grabbed Rosa by her clothing, causing it to rip, and restrained her by grabbing onto both of her wrists. Count III alleged that defendant knowingly and without legal justification made physical contact of an insulting or provoking nature with Rosa based on the same acts set forth in Count II.

¶ 6 Also on January 22, 2025, the State filed a verified petition to deny defendant pretrial release. In its petition, the State alleged that defendant was charged with detention-eligible offenses and he posed a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(1.5) (West 2024) (certain felonies); 725 ILCS 5/110-6.1(a)(4) (West 2024) (domestic battery or aggravated domestic battery).

¶ 7 The State attached to its petition a sworn synopsis drafted by the arresting agency in this case. The synopsis provides that at 6:17 p.m. on January 14, 2025, the Kane County Sheriff's Department received a 911 call reporting a man "actively fighting and beating his wife." Upon arriving at the scene, officers spoke with defendant, Rosa, and others. Due to a language barrier, a witness, Erica T., translated for Rosa. Through Erica, Rosa relayed that she and defendant were in their bedroom. Defendant had recently ingested a lot of cocaine. Defendant suddenly became irate, began to yell at Rosa, and accused her of stealing money. Defendant grabbed Rosa and threw her against a wall. Defendant then choked Rosa by placing both hands around her neck. Rosa did not lose consciousness, but advised that it was hard to breathe, that her neck hurt after the attack, and that she urinated while defendant was choking her. Rosa further advised that, while defendant was choking her, he stated that he wanted to kill her. The reporting officer noted that Rosa appeared to have some redness around the front of her neck and that the sweatshirt Rosa was wearing was torn. Rosa reported that the tear to her clothing occurred when defendant grabbed her. Rosa also told the officers that defendant grabbed her by the wrists and that her stomach was in pain from

defendant's actions. Witnesses observed defendant throw Rosa against the wall and choke her. Erica added that, while defendant was choking Rosa, he told her that he hated her and wanted to kill her. The officers attempted to speak with defendant, but he was "incredibly elevated due to what appeared to be *** drug usage and was incomprehensible in his speech." Rosa related that defendant made statements saying that he wanted to kill himself. Both Rosa and defendant were transported to the hospital for further evaluation.

¶ 8    As additional grounds upon which defendant should be denied pretrial release, the synopsis set forth defendant's criminal history, which included a 2016 conviction of aggravated criminal sexual abuse, a 2013 conviction of unlawful possession of a controlled substance, a 2013 conviction of criminal trespass to a residence, a 2013 conviction of resisting a peace officer, and two 2013 convictions of a violation of an order of protection. The synopsis indicated that defendant was sentenced to 4½ years' imprisonment for the conviction of aggravated criminal sexual abuse and 24 months' probation for one of the convictions of violation of an order of protection. In addition, defendant was sentenced to 24 months' probation for the conviction of unlawful possession of a controlled substance, with that sentence being "terminated unsatisfactorily."

¶ 9                                    B. Detention Hearing

¶ 10    Judge Salvatore LoPiccolo, Jr., held a hearing on the State's petition the day it was filed. At that hearing, the State submitted the synopsis and a Kane County Domestic Violence Supplemental Report (Supplemental Report). Defense counsel objected to the admission of the Supplemental Report, arguing that: (1) the first page of the Supplemental Report does not reference the incident number; (2) the statements in the Supplemental Report are not sworn; (3) it is unclear who provided the information in the Supplemental Report, who transcribed the information therein, and who submitted the information; and (4) the Supplemental Report references

information related to other police report numbers that were not provided or are not supported by any charges. The court admitted the Supplemental Report over defendant's objection. The court found that the Supplemental Report "goes to the same incident as is reported in [the synopsis]," explaining that the Supplemental Report provides the date of the incident (January 14, 2025), the time of the incident (18:17 hours), the location of the incident, the victim's name, and defendant's name. The court added that it was admitting the Supplemental Report "specifically for the information that is relayed there in regards to the relationship to the victim of the defendant being a spouse, as well as the fact that *** the victim and offender reside together." The court stated that it was not considering the other police reports referenced in the Supplemental Report.

¶ 11　Following the court's ruling, the State reviewed defendant's criminal history as outlined in the synopsis. The State also noted that it spoke with a Sergeant Monaghan of the Kane County Sheriff's Department, "who did review the report that was submitted by the arresting officer [and] indicated that Rosa is the defendant's wife" and that defendant and Rosa reside at the same address.

¶ 12　In argument, the State asserted that the proof is evident or the presumption great that defendant committed the charged offenses. Regarding the existence of a domestic relationship between Rosa and defendant, the State relied on the synopsis, noting that the individual who called 911 reported that a male was "actively fighting and beating his wife." The State also observed that the first page of the Supplemental Report identifies defendant's relationship to Rosa as "spouse" and the second page of the Supplemental Report identifies the offender as "[h]usband" and the victim as "[w]ife." As to the underlying charges, the State argued that there is evidence of domestic battery by strangulation, bodily harm, and physical contact. The State relied on the synopsis and the Supplemental Report, referencing Rosa's account of the incident as relayed through the translator (Erica), whom the State described as "a friend and also a witness." The State also cited

the officers' description of Rosa's physical condition and her clothing, the witnesses' corroboration of the attack, and Erica's statement that defendant told Rosa that he hated her and wanted to kill her.

¶ 13    The State next argued that defendant poses a real and present threat to the safety of any person or persons of the community, specifically Rosa. The State asserted that this case involved a crime a violence and, citing defendant's prior convictions, contended that defendant's criminal history is indicative of violent, abusive, or assaultive behavior.

¶ 14    Finally, the State argued that there is no condition or combination of conditions that can mitigate the real and present threat to Rosa. The State pointed out that defendant was twice convicted of violating a prior order of protection. The State cited the violent nature of the charges against defendant and defendant's statements that he hated Rosa and wanted to kill her. The State argued that even if defendant resided at a different address, electronic home monitoring (EHM) or GPS would not prevent him from committing any crime, as those devices "would simply let us know after the fact where he is."

¶ 15    In her response, defense counsel first argued that the State did not meet its burden by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged. Defense counsel asserted that the synopsis does not contain any statement made by Rosa. Rather, it merely contains Erica's translation of a statement purportedly made by Rosa. Defense counsel contended that it was a "reasonable inference" that Erica was a friend of Rosa, suggesting that the women's friendship rendered unreliable both the statement translated by Erica for Rosa and Erica's corroborating account. Defense counsel further argued that, other than Erica, the synopsis does not identify the alleged witnesses to the encounter or who interviewed them. Defense counsel also maintained that there was no corroboration of Rosa's

claim that she urinated herself while being choked. Defense counsel called into question the extent of Rosa's alleged injuries, noting that the officers only observed "redness" on Rosa's neck. Moreover, defense counsel contended that that the synopsis does not establish the nature of the relationship between defendant and Rosa. According to defense counsel, the synopsis's reference to the parties' relationship was merely a "conclusory statement" because it does not provide a source for that information.

¶ 16   Next, defense counsel argued that the State failed to meet its burden by clear and convincing evidence that defendant poses a real and present threat to any person or persons based on specific articulable facts. Defense counsel noted that most of the criminal history proffered by the State is more than 11 years old and that, other than the offenses at issue, defendant has no charges pending against him. Defense counsel also asked the court to consider defendant's physical condition. She asserted that defendant has a "nasal trumpet in his nose to assist him in breathing and also has a large lump on his forehead."

¶ 17   Lastly, defense counsel argued that there are conditions that can mitigate any threat. Defense counsel suggested a no-contact-and-stay-away order. Defense counsel acknowledged that she did not have an alternate address to provide to the court for defendant. However, she stated that she had "no reason to believe [defendant] wouldn't follow a stayaway order given that it has been years since there has been any lack of following a court order."

¶ 18   The trial court denied defendant pretrial release. In extensive oral findings, the court concluded that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged. Initially, the court determined that a domestic relationship existed between defendant and Rosa. The court noted that the synopsis specifically references that the individual who called 911 reported "a male who is actively fighting

and beating his *wife*." (Emphasis added.) The court further noted that the Supplemental Report and the proffer the State made in court both indicate that Rosa is defendant's spouse and that the couple resides together.

¶ 19   Next, the court acknowledged evidence that Erica is Rosa's "friend," but found no evidence that this indicated a bias in favor of Rosa. The court noted that in Erica's translation, Rosa indicated that she and defendant were in their bedroom and that defendant had ingested a lot of cocaine. Rosa then related that defendant suddenly became irate, began to yell at her, and accused her of stealing money. Defendant grabbed Rosa and threw her against the wall. Defendant then began to choke Rosa by placing both hands around her neck. Rosa had trouble breathing and her neck hurt after the attack. Rosa also reported that she urinated herself while being choked, that defendant tore her shirt when he grabbed her, and that defendant told Rosa that he wanted to kill her. The court noted that Rosa's account was corroborated by the officers, who observed redness on the front of her neck and a tear to Rosa's sweatshirt. The court also noted that Erica told the officers that, while defendant was choking Rosa, he told Rosa that he hated her and wanted to kill her and that other witnesses observed defendant throw Rosa against the wall and choke her.

¶ 20   Next, the court found that the State had proven by clear and convincing evidence that defendant poses a real and present threat to the safety of Rosa based on the specific, articulable facts. The court found defendant's criminal history indicative of violent, abusive, or assaultive behavior, citing defendant's 2016 conviction of aggravated criminal sexual abuse and his two 2013 convictions of a violation of an order of protection. The court found defendant a threat to Rosa specifically, pointing to evidence that defendant told Rosa he hated her and wanted to kill her as he choked her. The court found significant that the attack occurred in the presence of others,

explaining that "it doesn't matter if other people are around, he's still going to attack her, he's still going to threaten to kill her in front of other people who may or may not be able to help her."

¶ 21    Finally, the court found that the State had proven by clear and convincing evidence that there are no condition or combination of conditions of pretrial release that can mitigate the real and present threat posed by defendant. The court reiterated its earlier findings, stressing that "[t]he fact that where and who was present when he committed this crime and what he did in front of other people indicate that, when fueled by drugs or fueled by anger, he isn't able to control his actions." The court stated that EHM or a no-contact order would not protect Rosa because such conditions would not stop defendant from going to her. As the court explained, EHM "will tell us where he's at, but it won't tell us who he's with. It won't tell us what he's doing. It also won't tell us if he's in possession of *** intoxicating *** or controlled substances, which appear to have an affect [*sic*] on him of *** bringing out anger and violence." The court therefore granted the State's petition and, as a condition of detention, also ordered defendant not to contact Rosa from jail. The court entered a written order summarizing its oral findings.

¶ 22                    C. Motion for Relief and Notice of Appeal

¶ 23    On January 30, 2025, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defense counsel disputed the court's findings that the State met its burden to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged, that defendant posed a real and present threat to the safety of any person or persons or the community, and that no conditions could mitigate any alleged threat. A hearing on defendant's motion was held before Judge Donald Tegler, Jr., on February 5, 2025. At the hearing, defense counsel noted that although the synopsis indicated that witnesses had observed the attack, none of the witnesses were

identified. Defense counsel questioned how "a vague statement of unnamed witnesses" constituted corroboration. Defense counsel also contested the finding that there are no conditions that could mitigate the threat of harm to Rosa. Defense counsel proffered that a no-contact order and a requirement that defendant not return to the residence where the attack occurred would suffice.

¶ 24 Judge Tegler denied the motion for relief. He determined that Judge LoPiccolo was correct that there is clear and convincing evidence that defendant committed the charged offenses. Further, Judge Tegler concluded that there is clear and convincing evidence that defendant poses a danger to Rosa and possibly others, based on his criminal history and the violent nature of the attack against Rosa. Judge Tegler also concurred with Judge LoPiccolo's finding that there are no conditions or combination of conditions of pretrial release that can mitigate the real and present threat posed by defendant. Judge Tegler stated that he considered EHM, GPS, and an order of protection or other form of release but that he did not "see that they would apply in this case."

¶ 25 Defense counsel then offered new evidence that defendant may need surgery for a medical condition involving his nasal cavity. Defense counsel asked for defendant's release to receive treatment. Judge Tegler denied the request, but stated that he would consider a furlough if defendant schedules the procedure.

¶ 26 On February 7, 2025, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024) (providing that a party may initiate an appeal by filing a notice of appeal in the circuit court at any time prior to conviction). OSAD elected not to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) (providing that the issues raised in the motion for relief are before the appellate court regardless of whether an optional memorandum is filed).

Thus, on appeal, we are limited to the arguments made in defendant's motion for relief. The State filed a response in opposition to the appeal.

¶ 27                                II. ANALYSIS

¶ 28     Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 29 The decision to detain a defendant or grant a defendant pretrial release is reviewed under either the manifest-weight-of-the-evidence standard or the *de-novo* standard. The Illinois Supreme Court recently articulated the circumstances under which each standard applies:

"(1)[W]hen live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1 [of the Code (725 ILCS 5/110-6.1 (West 2024))], in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54.

In this case, no live testimony was presented. The parties proceeded solely by proffer and evidence otherwise documentary in nature. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 30 At the outset, we find that defendant has forfeited the arguments he raises on appeal. As noted above, defendant elected not to file a memorandum on appeal, opting instead to stand on the arguments made in his motion for relief. Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) requires the motion for relief to contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citation of the record and any relevant authorities. *People v. Burries*, 2025 IL App (5th) 241033, ¶ 25.

¶ 31    In this case, defendant's motion for relief details the proceedings before the trial court, sets forth some basic principles of law, and then states:

"16.    The State failed to meet its burden by proving by clear and convincing evidence that the proof is evident or the presumption is great that [defendant] committed the charged offenses and the court erred in finding clear and convincing evidence that the proof is evident or the presumption is great that [defendant] committed the charged offenses.

17.    The State failed to meet its burden of proving by clear and convincing evidence that there was [a] real and present threat to Ms. Jones [*sic*], and the Court erred in ruling that there was clear and convincing evidence that there was real and present threat Ms. Jones [*sic*].

18.    The State failed to meet its burden of proving by clear and convincing evidence that no conditions could mitigate the real and present threat to Ms. Jones [*sic*] and the Court erred in ruling that no conditions exist that would mitigate that threat."

Defendant does not further develop these arguments. He does not explain how the State failed to meet its burden of proof or why the trial court's findings constituted error. Further, he does not cite to the record on appeal or direct us to any relevant case law or statutory authority other than the basic principles of law applicable to proceedings under the Code. A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a repository in which the appealing party may foist the burden of argument and research. *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56; *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Defendant's failure to develop these arguments and direct us to any relevant authority compels us to find that he has forfeited these claims. See Ill. S. Ct. R. 604(h)(7)

(eff. Apr. 15, 2024) ("Whether made in the motion for relief alone or as supplemented by [a] memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citation of the record and any relevant authorities."); *People v. Woods*, 2024 IL App (3d) 230592, ¶ 32 (holding that undeveloped arguments in Rule 604(h) appeals are forfeited); *People v. Palomar*, 2024 IL App (2d) 230476, ¶ 17 (concluding that a defendant's failure to develop argument in a Rule 604(h) appeal results in forfeiture). Even absent forfeiture, however, the trial court did not err in granting the State's petition to deny defendant pretrial release.

¶ 32    First, we find that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed a detainable offense. 725 ILCS 5/110-6.1(e)(1) (West 2024). Defendant was charged with aggravated domestic battery (strangle) (720 ILCS 5/12-3.3(a-5) (West 2024)) and domestic battery (bodily harm and physical contact) (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2024)). As charged, domestic battery and aggravated domestic battery are detainable offenses under section 110-6.1(a)(4) of the Code (725 ILCS 5/110-6.1(a)(4) (West 2024) ("Upon verified petition by the State, the court shall hold a hearing and may deny a defendant pretrial release only if *** the defendant is charged with domestic battery or aggravated domestic battery under Section 12-3.2 or 12-3.3 of the Criminal Code of 2012"). A person commits domestic battery if he or she knowingly without legal justification by any means (1) causes bodily harm to any family or household member; or (2) makes physical contact of an insulting or provoking nature with any family or household member. 720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2024). A person commits aggravated domestic battery if, in committing a domestic battery, the person strangles another individual. 720 ILCS 5/12-3.3(a-5) (West 2024). A "family or household member" includes a spouse, a former spouse, persons who share or formerly shared a common

dwelling, and persons who have or have had a dating or engagement relationship. 720 ILCS 5/12-0.1 (West 2024). "Strangle" means "intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual." 720 ILCS 5/12-3.3(a-5) (West 2024).

¶ 33    Here, the State provided evidence that defendant and Rosa were family or household members. Notably, the synopsis indicates that the sheriff's department received a 911 call reporting a man actively fighting and beating his "wife." The Supplemental Report identifies defendant's relationship to Rosa as "spouse," refers to the offender (defendant) as "[h]usband" and the victim (Rosa) as "[w]ife." The Supplemental Report also indicates that the offender and the victim reside together. In addition, the State presented evidence via the synopsis that on the date of the alleged offense, defendant became irate and began to yell at Rosa. Defendant then grabbed Rosa, threw her against a wall, and began to strangle Rosa by placing both hands around her neck to the point that Rosa had difficulty breathing. Rosa also reported that defendant grabbed her by the wrists and ripped her clothing and that she experienced stomach pain from defendant's actions.

¶ 34    At the hearing on his motion for relief, defense counsel noted that although the synopsis indicated that witnesses had observed defendant attack Rosa, none of those witnesses were named within the synopsis. Defense counsel questioned how "a vague statement of unnamed witnesses" could corroborate what occurred. However, as this court has previously observed, the quantum of evidence required to detain a defendant pending trial is less than what is required at trial to prove guilt beyond a reasonable doubt. See 725 ILCS 5/110-6.1(f)(2), (f)(4)-(f)(6) (West 2024); *People v. Santiago*, 2024 IL App (2d) 240499-U, ¶ 28. Defense counsel's concerns go to the weight of the evidence. Indeed, section 110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2024)) expressly permits the parties to a detention hearing to present evidence by way of proffer based on

reliable information, and this court has previously held that a police synopsis alone may be sufficient to sustain the State's burden. See, *e.g.*, *People v. Hill*, 2024 IL App (2d) 240436-U, ¶ 29; *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 24; *People v. Jones*, 2024 IL App (2d) 230546-U, ¶ 9; *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24. Given the record before us, we conclude that the State proved by clear and convincing evidence that that the proof is evident or the presumption great that defendant committed the charged offenses.

¶ 35    Next, defendant argued in his motion for relief that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of Rosa based on the specific, articulable facts of the case. We disagree.

¶ 36    Under the Code, factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2024)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent,

abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 37    Here, the synopsis and the Supplemental Report indicate that the nature and circumstances of the charged offenses included violence. 725 ILCS 5/110-6.1(g)(1) (West 2024). Defendant grabbed Rosa, threw her against a wall, and attempted to strangle her. As defendant had his hands around Rosa's neck, he told her that he hated her and wanted to kill her. 725 ILCS 5/110-6.1(g)(3), (4) (West 2024). Further, defendant's prior criminal history is indicative of violent, abusive, or assaultive behavior. 725 ILCS 5/110-6.1(g)(2) (West 2024). Defendant has convictions of aggravated criminal sexual abuse, resisting a peace officer, and violations of an order of protection. Moreover, as the trial court pointed out, the fact that others were around did not dissuade defendant from attacking Rosa. 725 ILCS 5/110-6.1(g)(9) (West 2024). After assessing the statutory factors, we conclude that the State proved by clear and convincing evidence that defendant poses a real and present threat to the safety of Rosa.

¶ 38    Finally, defendant argued in his motion for relief that the State failed to meet its burden of proving by clear and convincing evidence that there are no conditions that could mitigate the real and present threat to Rosa based on the specific, articulable facts of the case. Again, we disagree.

¶ 39    In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties,

employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as " whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2024).

¶ 40    As described above, the nature and circumstances of the charged offenses included violence, involving defendant attacking Rosa, threatening to kill her, and attempting to strangle her. The weight of the evidence against defendant was robust. The attack was corroborated by several individuals. Further Rosa's physical condition, which included redness around her neck and torn clothing, showed evidence of an attack. Defendant's prior criminal history is also indicative of violent, abusive, or assaultive behavior. As noted, defendant has prior convictions of aggravated criminal sexual abuse, resisting a peace officer, and violations of an order of protection. The record further suggests that defendant was under the influence of drugs at the time of the attack. Given this record, we agree with the trial court that the conditions of release discussed by the parties, including EHM, GPS, or a no-contact-and-stay-away order, would not assure Rosa's safety. Quite simply, defendant's previous convictions, most notably his violations of an order of protection, demonstrate that it is unlikely that defendant will comply with court directives. Moreover, while EHM or GPS would indicate defendant's location, it would not show who he is with, what he is doing, or whether he is under the influence of a controlled substance. Indeed, the ability of such devices to detect harm is dependent on the ability of law enforcement to intervene once a violation of the conditions of release is detected. Hence, we conclude that the State met its burden of proving by clear and convincing evidence that no condition or combination of conditions

would mitigate the real and present threat defendant poses to Rosa.

¶ 41                                      III. CONCLUSION

¶ 42      For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 43      Affirmed.